**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

  v.                                                               Case No. 05-CR-27

**THEODORE MILNE**
        **Defendant.**

---

### SENTENCING MEMORANDUM

Defendant Theodore Milne operated an auto dealership in Plymouth, Wisconsin. In January 1998, he obtained a line of credit worth $600,000 from Associated Bank, which was collateralized by his fleet of cars. His loan agreement required him to periodically notify the bank of the status of the fleet and to pay down the loan when he made a sale.

The business did not do well. Defendant began selling the cars that secured the loan without notifying the bank or making the required payments. From May 2000 to January 2001, he submitted five statements to the bank falsely representing that he owned cars that he had sold. During periodic inspections, he also falsely stated that missing cars were out for repairs.

On January 19, 2001, defendant voluntarily came forward and advised the bank that he intended to close the business and had sold most of the cars that secured the loan. He cooperated with the bank in turning over the balance of his fleet and reached a financial settlement on the amount owed on the loan.

Subsequently, the government indicted defendant on bank fraud charges, and he pleaded guilty. The probation office prepared a pre-sentence report ("PSR"), which

calculated his offense level as 15 (base level 6, U.S.S.G. § 2F1.1(a) (2000), plus 10 based on amount of loss (more than $500,000), § 2F1.1(b)(1)(K), plus 2 for more than minimal planning, § 2F1.1(b)(2)(A), and minus 3 for acceptance of responsibility, § 3E1.1),[1] and his criminal history category as I, producing an imprisonment range of 18-24 months under the sentencing guidelines. Neither party objected to the guideline calculations or sought a departure, but defendant requested a non-guideline sentence that would permit him to remain in the community, while the government sought a prison sentence within the advisory range.

I concluded that based of the seriousness of the offense I was obliged to send defendant to prison, but that under the circumstances the term called for by the guidelines was longer than necessary. In this memorandum, I set forth more fully the reasons for the sentence imposed.

## I. SENTENCING PROCEDURE

In imposing sentence, I consider the factors set forth in § 3553(a), which include:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed--
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  the kinds of sentences available;

---

[1]The PSR used the 2000 version of the guidelines to avoid ex post facto concerns. U.S.S.G. § 1B1.11(b)(1).

2

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

I consider the statutory factors sequentially. First, I consider the specifics of the case, i.e. the nature and circumstances of the offense and the history and characteristics of the defendant. Second, I consider the facts of the case in light of the purposes of sentencing and the needs of the public and any victims. Finally, I translate my findings and impressions into a numerical sentence. In doing so, I take into account the kinds of sentences available, the sentencing range established by the Sentencing Commission, any pertinent policy statements issued by the Commission, and any restitution due the victims of the offense. In imposing a specific sentence, I also seek to avoid unwarranted sentence disparities. United States v. Leroy, 373 F. Supp. 2d 887, 894-95 (E.D. Wis. 2005); see also United States v. Ranum, 353 F. Supp. 2d 984, 989 (E.D. Wis. 2005). After considering the above factors, I attempt to impose a sentence sufficient but not greater than necessary to comply with the purposes of sentencing set forth in § 3553(a)(2). United States v. Galvez-Barrios, 355 F. Supp. 2d 958, 960 (E.D. Wis. 2005).

## II. APPLICATION

**A. Specifics of Case**

    **1. Nature of Offense**

Defendant caused the bank to suffer a significant loss, more than $500,000. In addition, he made a number of false statements over an extended period of time. Thus, his offense was a serious one.

To his credit, though, defendant voluntarily reported his misconduct and cooperated with the bank in attempting to repay his debt. The bank was able seize and sell the remainder of defendant's fleet for about $36,000. Defendant then essentially emptied his pockets, including turning over every cent of equity he had in his house (about $38,000) to try to make good on his obligation. Finally, defendant did not take the bank's money out of greed or a desire to live a lavish lifestyle; rather, he misguidedly tried to keep a sinking business afloat.

    **2. Character of Defendant**

Aside from this offense, defendant had led a praiseworthy life, and numerous friends, neighbors and family members wrote letters attesting to his good character, helpful nature and community involvement. Defendant graduated from high school and worked in auto sales for many years before opening his own dealership. After closing the dealership, he worked for an insurance company, and upon being laid off in the wake of 9/11, obtained a license to sell insurance himself. Thus, despite setbacks, defendant found work and continued to support his family. Married for twenty-five years, defendant fathered and raised five children, ages nineteen, seventeen, fifteen, twelve and four, all but

4

the eldest of whom lived with defendant and his wife. He appeared to be a good and caring father. It also appeared that defendant's family had sacrificed a great deal due to the financial fall-out of the failure of the car dealership and was in difficult financial straits. Defendant's wife had recently lost her job, making defendant the sole bread-winner. Thus, defendant's absence for an extended period of time would have been an extreme hardship.

**B.     Purposes of Sentencing and Needs of Public and Victim**

Defendant had no prior record, was unlikely to re-offend and presented no danger to the public. However, his misconduct involved a substantial amount of money. Thus, to recognize the seriousness of the offense, promote respect for the law and deter others from engaging in similar misconduct, I felt obliged to impose a prison sentence. I believed that defendant's requested sentence, which included no prison time, was inadequate.[2]

**C.     Consideration of Guidelines**

The guidelines called for a term of 18-24 months, and the government asked me to impose a sentence within that range. For several reasons, I found this range greater than necessary to satisfy the purposes of sentencing.

First, the standard reduction for acceptance of responsibility did not fully account for defendant's voluntary reporting of his misconduct to the bank and his significant early

---

[2]Because I was uncertain as to how much restitution defendant owed and as to the effect of his settlement with the bank, I held open the determination of restitution. 18 U.S.C. § 3664(d). Because defendant was self-employed and not a high income earner, and because it appeared that he would owe a large amount of restitution, I could not conclude that a sentence consisting of community confinement would substantially enhance his ability to repay the bank. Cf. United States v. Peterson, 363 F. Supp. 2d 1060, 1062-63 (E.D. Wis. 2005) (imposing sentence of one day in prison followed by a substantial period of community confinement because restitution amount was manageable and prison sentence would have caused the defendant to lose his job).

5

efforts to ameliorate the effects of such misconduct. Under U.S.S.G. § 3E1.1, courts may consider a number of factors in deciding whether to grant the reduction for acceptance of responsibility. Such factors include: voluntary termination or withdrawal from criminal conduct or associations; voluntary payment of restitution prior to adjudication of guilt; voluntary surrender to authorities promptly after commission of the offense; voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense; voluntary resignation from the office or position held during the commission of the offense; and post-offense rehabilitative efforts. U.S.S.G. § 3E1.1 cmt. n.1. In most cases, however, courts grant the reduction based on a single factor: "Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct," id. cmt. n.3, and do not consider additional conduct demonstrating acceptance, remorse or atonement, see United States v. Smith, 311 F. Supp. 2d 801, 804 (E.D. Wis. 2004).

In the mandatory guideline era, courts generally held that an extraordinary demonstration of acceptance could justify a departure, id. (citing United States v. Gee, 226 F.3d 885, 900-02 (7th Cir. 2000); United States v. Carter, 122 F.3d 469, 475-76 (7th Cir. 1997)); see also United States v. Jones, 233 F. Supp. 2d 1067, 1070 (E.D. Wis. 2003) (collecting cases), but such cases were quite rare, see, e.g., United States v. Bean, 18 F.3d 1367, 1369 (7th Cir. 1994). Further, in October 2003, pursuant to the PROTECT Act, the Commission amended the guidelines to prohibit departures based on acceptance of responsibility. U.S.S.G. § 5K2.2(d)(2) (2004). However, under the advisory guideline regime created by United States v. Booker, 125 S. Ct. 738 (2005), courts have greater

6

flexibility to fashion sentences that fit the circumstances of the case.[3] Where appropriate, courts may grant additional consideration to defendants who demonstrate acceptance beyond that necessary to obtain a two or three level reduction under § 3E1.1. This is so because such conduct bears directly on their character, § 3553(a)(1), and on how severe a sentence is necessary to provide deterrence and punishment, § 3553(a)(2). Further, courts should encourage offenders to mitigate their misconduct voluntarily, whether by admitting it, paying restitution or making efforts to address substance abuse, mental health or other problems that contributed to it.

In the present case, defendant voluntarily informed the bank that he had sold many of the cars securing the loan, cooperated in turning over the balance, and paid over to the bank whatever he had to make good on his obligation. He did all this well before he was implicated in or charged with criminal activity. I concluded that these ameliorative efforts merited some sentencing consideration and therefore gave defendant the equivalent of a two level reduction.

Second, the guidelines failed to take into account defendant's positive personal characteristics, including his excellent employment record, family ties and community involvement. See Ranum, 353 F. Supp. 2d at 990-91. I also thought it relevant that defendant did not spend the bank's money on luxury items but rather to prop up a failing business. With their almost singular focus on loss amount, the guidelines sometimes are

---

[3] Even if the guidelines were still mandatory, amended § 5K2.0(d)(2) would not apply in the present case because that provision was enacted after defendant completed his crime. See U.S.S.G. § 1B1.11(b)(1); see also Smith, 311 F. Supp. 2d at 805-06.

7

insufficiently sensitive to personal culpability.[4] See id. at 990. Finally, I thought it appropriate to consider that as the sole supporter of a large family, a long period of imprisonment would have a very harsh effect on defendant's dependents. Thus, based on these factors, I reduced defendant's range by one additional level.

The resulting range was 10-16 months, which I considered sufficient but not greater than necessary to satisfy the purposes of sentencing. The range fell within zone C of the grid. Considering the types of sentences available, § 3553(a)(3), I concluded that a split sentence was appropriate. This provided for a period of confinement in prison, serving the goals of deterrence and punishment, and an additional period of home confinement, during which defendant would be able to work, support his family and continue repaying his debt to the bank.

---

[4] One commentator recently suggested that basing the sentence on "personal culpability" rather than the loss amount is to treat the guidelines "cavalierly." Susan R. Klein, The Return of Federal Judicial Discretion in Criminal Sentencing, 39 VALPARAISO UNIV. L. REV. 693, 729-30 (Spr. 2005). However, after Booker, courts are required to consider any § 3553(a) factor put forward by the defense that might make the guideline sentence inappropriate. United States v. Dean, 414 F.3d 725, 730-31 (7th Cir. 2005) (citing Simon v. United States, 361 F. Supp. 2d 35, 39-41 (E.D.N.Y. 2005); United States v. Kelley, 355 F. Supp. 2d 1031, 1035-37 (D. Neb. 2005); United States v. Ranum, 353 F. Supp. 2d 984, 985-86 (E.D. Wis. 2005)). In many cases, this requirement will necessitate consideration of the defendant's motive for committing the offense rather than merely the amount involved. A defendant who offends in order to support his family is less culpable and thus more deserving of leniency than one who steals from the vulnerable to finance a lavish lifestyle. See, e.g., United States v. Imperl, No. 01-CR-140, 2005 WL 1315411 (E.D. Wis. June 2, 2005), aff'd, 2005 WL 1553974 (7th Cir. July 1, 2005). To distinguish between different types of defendants is not to treat the guidelines cavalierly but to take seriously the obligation to consider all of the § 3553(a) factors.

## III. CONCLUSION

Therefore, for the reasons stated, I committed defendant to the custody of the Bureau of Prisons for a period of five months. Upon release he was ordered to serve a five year supervised release term, with a condition of five months home confinement. Other conditions appear in the judgment.

**SO ORDERED**.

Dated at Milwaukee, Wisconsin, this 30th day of August, 2005.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

9

Case 2:05-cr-00027-LA   Filed 08/31/05   Page 9 of 9   Document 13